Christopher MULLINS, Appellee,

v.

NORTH DAKOTA DEPARTMENT OF
HUMAN SERVICES, Appellant.

George DOLECHEK as parent and guard-
ian-in-fact of Terry Dolechek, a minor
person, and Terry Dolechek, an individ-
ual, Appellants,

v.

NORTH DAKOTA DEPARTMENT OF
HUMAN SERVICES, Appellee.

Margo LEABO, Appellee,

v.

NORTH DAKOTA DEPARTMENT OF
HUMAN SERVICES, Appellant.

Civ. Nos. 890316, 890215 and 890240.

Supreme Court of North Dakota.

April 25, 1990.

Sidney J. Hertz Fiergola (argued), Asst. Atty. Gen., Bismarck, for North Dakota Dept. of Human Services.

Gerry Gunderson (argued), of Wheeler Wolf, Bismarck, for Christopher Mullins, Terry Dolechek and Margo Leabo.

ERICKSTAD, Chief Justice.

These consolidated appeals concern denials by the Department of Human Services (the Department) of applications by Christopher Mullins, Terry Dolechek and Margo Leabo for case management services by the Developmental Disabilities Division of the Department. We conclude that the denials were improperly based upon Service Chapters of the Department's Manual which have not been adopted in accordance with Ch. 28–32, N.D.C.C.

In denying Mullins' application in accordance with Service Chapters 825–01 and 825–02 of the North Dakota Department of Human Services Manual, the Department found:

"(5) ... It is conceded that Christopher is not mentally retarded and is not a member of the plaintiff class in the case of *A.R.C. vs. Olson.*[1]

"(6) The second step of the described eligibility process involves determining whether the applicant is eligible for services even though there is no entitlement. As Christopher is not mentally retarded, the only category he could qualify under is that of an individual with a condition so severe as to constitute a developmental disability, and for whom the services and intervention tech-

1. The reference is to persons who are members of the plaintiff class in *Ass'n for Retarded Citi-* *zens of North Dakota v. Olson,* 713 F.2d 1384 (8th Cir.1983).

niques required on behalf of that individual are so closely related to those applied to persons with the condition of mental retardation that provision of those same services and techniques is appropriate.

\* \* \* \* \* \*

"(8) The DD program administrator and Human Service Center Director correctly concluded that it was not necessary to determine whether Christopher was developmentally disabled where the information relative to his condition clearly showed that he was of average intelligence and his disability, consisting of psychiatric disorders, was dissimilar to mental retardation."

On appeal, the district court[2] reversed the Department's decision and remanded "with instructions to make a determination whether Christopher is 'developmentally disabled' as defined under the statute, and to provide the appropriate services thereunder." The Department appealed.

In denying Dolechek's application in accordance with Chapters 825–01 and 825–02, the Department found that Dolechek was not a member of the plaintiff class "entitled" to services; was not mentally retarded; and

"7. Mr. Dolechek's described and documented impairments, while not insignificant, are neither 'severe' nor do they result in 'substantial' functional limitations in three or more of the seven 'areas of major life activity' within the intended application of those terms, as found in the definition of 'developmental disability' at Section 25–01.2–01, N.D.C.C., and Section 825–02–02 of the Department of Human Services Manual. He is clearly not among the most severely functionally limited population which the program is intended to serve.

"8. Even if Terry Dolechek were found to have a condition so severe as to constitute a developmental disability, the services and intervention techniques required on his behalf would not be so closely related to those required for persons with the condition of mental retardation that providing him with those services would be appropriate."

On appeal, the district court[3] affirmed the Department's decision. Dolechek appealed.

In denying Leabo's application in accordance with Chapters 825–01 and 825–02, the Department found that Leabo was not entitled to services as a member of the plaintiff class; that she was not mentally retarded; and

"(6) Ms. Leabo has been diagnosed as having a seizure disorder, and has exhibited behavioral problems which have been described or diagnosed at various times as 'adjustment disorder,' 'histrionic personality,' and 'attention-deficit disorder.'

"(7) Ms. Leabo's described and documented impairments, while not insignificant, are neither 'severe' nor do they result in 'substantial' functional limitations in three or more of the seven 'areas of major life activity' within the intended application of those terms. . . . She is clearly not among the most severely functionally limited population which the program for which she applied is intended to serve.

"(8) Even if Ms. Leabo were found to have a condition so severe as to constitute a developmental disability, she has not shown that she fulfills the eligibility requirement that the services and intervention techniques required on her behalf are so closely related to those required for persons with the condition of mental retardation that providing her with those services would be appropriate."

On appeal, the district court[4] reversed the Department's decision and remanded for a

2. The Honorable Bruce E. Bohlman, District Judge.

3. The Honorable Maurice R. Hunke, District Judge.

4. The Honorable Michael O. McGuire, District Judge.

determination of whether Leabo "is developmentally disabled as defined under the statute, and to provide the appropriate services thereunder if she is found to be developmentally disabled." The Department appealed.

While the parties have raised a number of issues on appeal, we deem the dispositive issue to be whether or not the Department may determine an applicant's eligibility for case management services by the Developmental Disabilities Division of the Department by applying Service Chapters 825–01 and 825–02, which have not been promulgated in accordance with Ch. 28–32, N.D.C.C.

"Developmental disability" is defined by § 25–01.2–01(1), N.D.C.C.:

" 'Developmental disability' means a severe, chronic disability of a person which:

a. Is attributable to a mental or physical impairment or combination of mental or physical impairments;

b. Is manifested before the person attains age twenty-two;

c. Is likely to continue indefinitely;

d. Results in substantial functional limitations in three or more of the following areas of major life activity:

(1) Self-care;

(2) Receptive and expressive language;

(3) Learning;

(4) Mobility;

(5) Self-direction;

(6) Capacity for independent living; and

(7) Economic sufficiency; and

e. Reflects the person's needs for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services which are of lifelong or extended duration and are individually planned and coordinated."

Section 25–01.2–18, N.D.C.C., provides that the Department "may adopt, in accordance with chapter 28–32, any rules necessary to implement this chapter.... The rules adopted may not restrict or limit the rights guaranteed by this chapter."

Chapters 825–01 and 825–02 of the Department's Manual, which the Department uses to decide whether or not to provide case management services by the Developmental Disabilities Division, provide that persons who are members of the plaintiff class in *Ass'n for Retarded Citizens of North Dakota v. Olson*, 713 F.2d 1384 (8th Cir.1983), are entitled to such services. Chapters 825–01 and 825–02 also provide that persons in the following two categories "may be eligible, but not entitled to services":

"Persons with a diagnosis of mental retardation, as defined by the American Association of Mental Deficiency, whose condition is not so severe as to constitute a developmental disability but who can benefit from treatment and services; and

"Persons with a condition so severe as to constitute a developmental disability and for whom *the services and intervention techniques* required on behalf of the individual are so closely related to those applied to persons with the condition of mental retardation that provision is appropriate"

(825–01) and "enable a team ... to determine whether the disabling condition(s) is so severe and substantial as to meet the criteria for developmental disability." (825–02).

The Department is an administrative agency and is subject to the provisions of Chapter 28–32, N.D.C.C. *Falcon v. Williams County Social Service Board*, 430 N.W.2d 569 (N.D.1988). Chapter 28–32, N.D.C.C., prescribes the procedure the Department must follow to adopt a valid rule. *Johnson v. North Dakota Workers Compensation Bureau*, 428 N.W.2d 514, 518 (N.D.1988). Section 28–32–03(5), N.D.C.C., provides: "A rule is invalid unless adopted in substantial compliance with section 28–32–02."

Chapters 825–01 and 825–02 were not promulgated in accordance with Ch. 28–32, N.D.C.C. The Department, however, contends that Chapters 825–01 and 825–02 "are properly considered as policies dealing with the internal management of the Department," thus qualifying as an exception to the rulemaking requirement under § 28–32–01(6)(a), N.D.C.C.

Section 28–32–01(6)(a), N.D.C.C., provides that the term "rule" does not include "[a] rule concerning only the internal management of an agency which does not directly or substantially affect the substantive or procedural rights or duties of any segment of the public." *See also,* § 28–32–01(6)(k), (*l*), N.D.C.C. We are unable to conclude that Chapters 825–01 and 825–02 deal only with internal management of the Department. The Department has acknowledged that Chapters 825–01 and 825–02 prescribe "the method to determine who may be appropriately served by the DD Division" and that "[t]he purpose of these service chapters is to identify the members of the plaintiff class in *ARC v. Olson* and others who may be appropriately served." It is clear that the Department's reliance upon Chapters 825–01 and 825–02 results in the inclusion or exclusion of applicants for case management services from the Developmental Disabilities Division of the Department. Because Chapters 825–01 and 825–02 were not adopted in accordance with Ch. 28–32, N.D.C.C., they are invalid. *Little v. Spaeth,* 394 N.W.2d 700 (N.D.1986). The Department's denials of the instant applications for case management services as a result of the application of Chapters 825–01 and 825–02 to determine the applicants' eligibility are "ineffective ... because the [Department] failed to comply with the rulemaking procedure set forth in the North Dakota Administrative Agencies Practice Act (A.A.P.A.)." *Johnson v. North Dakota Workers Compensation Bureau, supra,* 428 N.W.2d at 514–515.

Section 28–32–12, N.D.C.C., provides that "[a] transcript of the evidence ... shall be furnished to any party to the proceeding ... at a uniform charge to be set by the agency, and such transcript fee shall be paid into the general fund." Section 28–32–17, N.D.C.C., provides that when an appeal has been taken, "after the deposit by the appellant of the estimated cost of a transcript of the evidence, the administrative agency concerned shall prepare and file ... the original or a certified copy of the entire proceedings before the agency." The district court granted a motion for waiver of Mullins' transcript fee. The Department contended in its brief on appeal that there is no authority for waiving a transcript fee and that the district court erred in waiving the fee. Mullins did not respond to the Department's argument. In light of the language of the statutes and Mullins' failure to respond, we direct the district court to vacate its order granting the motion to waive the transcript fee.

"Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services, Inc. v. Brooks,* 229 N.W.2d 69, 71 (N.D. 1975). Therefore, we deem it unnecessary to consider any of the other issues raised.

The *Mullins* judgment reversing the Department's decision is affirmed and we direct the district court to vacate its order granting the motion to waive the transcript fee. The *Leabo* judgment reversing the Department's decision is affirmed. The *Dolechek* judgment affirming the Department's decision is reversed. The matters are remanded to the district court with directions that they be remanded to the Department for redetermination of the applicants' eligibility for services under the relevant statutes, without reference to Service Chapters 825–01 and 825–02.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.