2008 ND 171

**Jesse RENNICH, through his guardians, Mary and Dave RENNICH, Petitioner and Appellant**

**v.**

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES and the State of North Dakota, Respondents and Appellees.**

**No. 20070335.**

Supreme Court of North Dakota.

Sept. 23, 2008.

David Boeck, Bismarck, N.D. for petitioner and appellant.

Jean R. Mullen, Assistant Attorney General, and Douglas Alan Bahr (on brief), Solicitor General, Office of Attorney General, Bismarck, N.D., for respondents and appellees.

CROTHERS, Justice.

[¶ 1] Jesse Rennich appeals from a district court judgment affirming the decision of the North Dakota Department of Human Services ("Department") that he was not eligible for community-based services under the Medicaid program. We affirm, concluding the Department did not improperly rely upon eligibility criteria that should have been formally promulgated as an administrative rule.

I

[¶ 2] Rennich has been diagnosed with Asperger's Disorder. Asperger's Disorder is defined as:

"a developmental disorder resembling autism that is characterized by impaired social interaction, by restricted and repetitive behaviors and activities, and by normal language and cognitive development."

*Merriam–Webster's Collegiate Dictionary* 73 (11th ed.2005).

[¶ 3] Rennich spent a significant part of his teen years at Dakota Boys and Girls Ranch, a residential treatment facility. At age 17 he returned to live with his parents in Bismarck and applied for ser-

vices through the Department. The Developmental Disabilities Division of the Department provides services to disabled individuals under two separate and distinct programs. Under N.D.C.C. ch. 25–01.2 and N.D. Admin. Code ch. 75–04–06, the State provides case management services through a state-funded program. The Department found that Rennich was eligible for case management services under N.D.C.C. ch. 25–01.2 and N.D. Admin. Code ch. 75–04–06.

[¶ 4] Rennich also requested services under the Medicaid program. Medicaid is a cooperative federal-state program designed to provide medically necessary care to needy individuals and is administered by the Department at the state level and by the United States Department of Health and Human Services at the federal level. *E.g., Oyloe v. North Dakota Dep't of Human Servs.*, 2008 ND 67, ¶ 8, 747 N.W.2d 106; *St. Benedict's Health Ctr. v. North Dakota Dep't of Human Servs.*, 2004 ND 63, ¶ 2, 677 N.W.2d 202. Rennich contends he is eligible for community-based services through Medicaid's Intermediate Care Facility for the Mentally Retarded ("ICF/MR") developmental disability waiver program. Under the waiver program, an individual who meets the criteria for residing in an ICF/MR may be eligible to receive community-based services. The eligibility requirements for this program are different than the criteria for state-funded developmental disability case management services under N.D.C.C. ch. 25–01.2 and N.D. Admin. Code ch. 75–04–06. *Compare* N.D.C.C. § 25–01.2–01(1) *and* N.D. Admin. Code § 75–04–06–02.1 *with* 42 C.F.R. § 435.1010 (2007).

[¶ 5] In assessing eligibility for community-based services under the Medicaid waiver program, the Department initially employs a Progress Assessment Review ("PAR"). The PAR is a series of questions designed to assess the individual's need for support in various areas, to be completed by people who know the disabled individual. The responses are "scored" and weighted by specialized computer software, which produces one of three possible results: (1) the individual is eligible for ICF/MR services; (2) the individual is ineligible for ICF/MR services; or (3) the data is not conclusive and professional judgment is required to determine eligibility. If the computer program determines the individual is eligible or ineligible, the PAR is determinative and no further assessment is required. If the computer determines the individual falls within the "grey area" of professional judgment required, the case will be individually reviewed by a professional staff member within the Department to determine whether the individual meets the eligibility criteria for the Medicaid waiver program.

[¶ 6] In Rennich's case, the PAR was initially completed by Rennich's case manager, with input from another staff member who had worked with Rennich in the past. Based upon their responses, the computer program determined professional judgment was required to assess Rennich's required level of care. Harry Miller, the Regional Developmental Disabilities Program Administrator at West Central Human Services, conducted an individual assessment applying the eligibility criteria identified in the federal Medicaid regulations. Miller determined Rennich did not meet the eligibility criteria for the Medicaid waiver program and therefore was not eligible to receive community-based services under the program.

[¶ 7] Rennich's parents appealed Miller's determination, requesting a hearing and that a second PAR be completed, this time with input from Rennich, his parents, representatives of the Protection and Ad-

vocacy Project, and staff at Dakota Boys and Girls Ranch. The Department conducted a second PAR with the additional input, and the result again was that Rennich was not automatically eligible or ineligible, but that professional judgment was required.

[¶ 8] An administrative hearing was held before an administrative law judge ("ALJ"). The ALJ submitted proposed findings and an order in which the ALJ recommended reversing the Department's decision to deny Rennich community-based Medicaid services. The Executive Director of the Department rejected the ALJ's proposed order, issued revised findings and an amended order explaining her reasons for rejecting the ALJ's findings and proposed order, and concluded Rennich was not eligible for community-based services under the Medicaid waiver program.

[¶ 9] Rennich appealed to the district court, which affirmed the Department's final order. Rennich has appealed to this Court.

## II

[¶ 10] "When a decision of an administrative agency is appealed from the district court to this Court, we review the decision of the agency." *J.P. v. Stark County Soc. Servs. Bd.,* 2007 ND 140, ¶ 9, 737 N.W.2d 627 (quoting *Martin v. Stutsman County Soc. Servs.,* 2005 ND 117, ¶ 8, 698 N.W.2d 278). "Courts exercise [ ] a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32." *Olson v. Workforce Safety & Ins.,* 2008 ND 59, ¶ 8, 747 N.W.2d 71. "Under N.D.C.C. § 28–32–49, we review an administrative agency's decision in the same manner as the district court, and [ ] we must affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of [Chapter 28–32] have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

*J.P.,* at ¶ 9; N.D.C.C. § 28–32–46.

[¶ 11] In reviewing an administrative agency's resolution of factual disputes, "we [do] not make independent findings of fact or substitute our judgment for that of the agency." *J.P.,* 2007 ND 140, ¶ 9, 737 N.W.2d 627; *Gustafson v. North Dakota Dep't of Human Servs.,* 2006 ND 75, ¶ 6, 712 N.W.2d 599. We "will only reverse if the agency's findings are not supported by a preponderance of the evidence" and must affirm if "a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *J.P.,* at ¶ 9; *Gustafson,* at ¶ 6; *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979). "Questions of law are fully reviewable on an appeal

from an administrative decision." *Oyloe,* 2008 ND 67, ¶ 7, 747 N.W.2d 106; *J.P.,* at ¶ 9.

### III

[¶ 12] Resolution of the issues raised on appeal requires that we consider the "Byzantine" labyrinth of federal law governing the Medicaid program. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). We begin with the recognition that the applicant for Medicaid benefits bears the burden of proving eligibility. *E.g., Oyloe,* 2008 ND 67, ¶ 8, 747 N.W.2d 106; *Estate of Pladson,* 2005 ND 213, ¶ 10, 707 N.W.2d 473.

[¶ 13] Rennich claims he is eligible for community-based services under the Medicaid waiver program, which is outlined in 42 C.F.R. §§ 441.300–441.310 (2007). The waiver program allows states to provide "home and community-based services that an individual needs to avoid institutionalization." 42 C.F.R. § 441.300 (2007). The waiver program requires that such benefits may only be provided to individuals who, in the absence of such services, would require Medicaid-covered care in a hospital, nursing facility, or ICF/MR. 42 C.F.R. § 441.301(b)(iii) (2007). Rennich claims he would be eligible for services in an ICF/MR.

[¶ 14] An ICF/MR provides services "to persons with mental retardation or persons with related conditions." 42 C.F.R. § 440.150(a)(2) (2007). The parties agree Rennich does not have mental retardation. "Persons with related conditions" is defined in 42 C.F.R. § 435.1010 (2007):

*"Persons with related conditions* means individuals who have a severe, chronic disability that meets all of the following conditions:

(a) It is attributable to—

(1) Cerebral palsy or epilepsy; or

(2) Any other condition, other than mental illness, found to be closely related to mental retardation because this condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons, and requires treatment or services similar to those required for these persons.

(b) It is manifested before the person reaches age 22.

(c) It is likely to continue indefinitely.

(d) It results in substantial functional limitations in three or more of the following areas of major life activity.

(1) Self-care.

(2) Understanding and use of language.

(3) Learning.

(4) Mobility.

(5) Self-direction.

(6) Capacity for independent living."

[¶ 15] The dispute in this case centers upon whether Rennich is a "person with related conditions," and particularly whether he has substantial functional limitations in three or more of the enumerated life activities. Miller, who conducted the "professional judgment" review after the PAR was non-determinative, found that Rennich had substantial functional limitations in self-direction and in capacity for independent living, but not in the four remaining categories. He therefore concluded Rennich did not meet the definition of a "person with related conditions" under federal Medicaid law and was ineligible for benefits under the Medicaid waiver program.

### IV

[¶ 16] Rennich contends the Department acted unlawfully "when it denied

[his] application for the DD waiver program by relying upon an instrument that does not validly measure the intended eligibility criterion." Rennich's challenge to the PAR is premised primarily upon the fact the Department's witnesses could not explain the methodology the computer used to "score" or weigh the responses and arrive at a determination that a person was eligible, ineligible, or professional judgment was required. Rennich also argued the Department was required to evaluate and approve the PAR through its formal rulemaking procedure under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32.

[¶ 17] We find it unnecessary to address Rennich's challenges to the PAR because, ultimately, the PAR was not determinative of his eligibility for the Medicaid waiver program. The computer did not determine that Rennich was eligible or ineligible, but only that the data was not conclusive and exercise of professional judgment was required to determine eligibility. Miller then reviewed Rennich's case and, applying the eligibility criteria in the federal regulations, determined Rennich was not eligible.

[¶ 18] Even if we were to agree with Rennich that the PAR was invalid or needed to be adopted in a formal rule, the remedy would not be that Rennich would automatically be entitled to benefits. If we were to disregard the computerized PAR results, the appropriate remedy would be to remand for reconsideration under the remaining applicable eligibility criteria. *See True v. Heitkamp,* 470 N.W.2d 582, 587 (N.D.1991); *Mullins v. North Dakota Dep't of Human Servs.,* 454 N.W.2d 732, 735 (N.D.1990). That is in effect what happened in this case when the PAR was not conclusive: Miller exercised professional judgment and independently applied the eligibility criteria in the federal

regulations. Accordingly, we conclude the computerized PAR results were not determinative of Rennich's eligibility, and the Department's use of the PAR does not provide a basis for relief on appeal.

V

[¶ 19] Rennich contends the Department acted unlawfully when it denied his application for the Medicaid waiver program "by relying upon eligibility criteria that does not have the force and effect of law." Rennich contends the Department was required to formally promulgate as administrative rules the PAR and any interpretive guidelines or manual provisions dealing with the Medicaid waiver program's eligibility criteria.

[¶ 20] Under the Administrative Agencies Practice Act, agencies are authorized to promulgate rules implementing statutes which they are empowered to administer or enforce. *See* N.D.C.C. § 28–32–02(1); *Amerada Hess Corp. v. State,* 2005 ND 155, ¶ 22, 704 N.W.2d 8 (quoting *Turnbow v. Job Serv. North Dakota,* 479 N.W.2d 827, 831 (N.D.1992)); *Steen v. North Dakota Dep't of Human Servs.,* 1997 ND 52, ¶ 18, 562 N.W.2d 83. "Rule" is defined in N.D.C.C. § 28–32–01(11):

> " 'Rule' means the whole or a part of an agency statement of general applicability which implements or prescribes law or policy or the organization, procedure, or practice requirements of the agency."

The term "rule," however, expressly excludes:

> "Any material, including a guideline, interpretive statement, statement of general policy, manual, brochure, or pamphlet, which is explanatory and not intended to have the force and effect of law."

N.D.C.C. § 28–32–01(11)(k).

[¶ 21] In a long line of cases, this Court has addressed the circumstances un-

der which an administrative agency will be required to formally promulgate rules. *See Amerada Hess,* 2005 ND 155, ¶ 22, 704 N.W.2d 8; *Brunner v. Ward County Soc. Servs. Bd.,* 520 N.W.2d 228, 232–33 (N.D. 1994); *Turnbow,* 479 N.W.2d at 831; *True,* 470 N.W.2d at 586–88; *Illies v. Illies,* 462 N.W.2d 878, 882–83 (N.D.1990); *Mullins,* 454 N.W.2d at 734–35; *Johnson v. North Dakota Workers Comp. Bureau,* 428 N.W.2d 514, 518–19 (N.D.1988). "[A]n administrative agency is not required to promulgate detailed rules interpreting every statutory provision ... [it administers or enforces], or covering every conceivable situation which might come before it." *Turnbow,* at 831 (quoting *Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124, 133 (N.D.1987)); *True,* at 587.

[¶ 22] Rennich argues that this Court's decision in *Mullins* is controlling and required the Department to formally promulgate as an administrative rule its guidelines and manual provisions on the Medicaid waiver program. In *Mullins,* this Court considered whether Service Chapters in the Department's Manual addressing eligibility for case management services under N.D.C.C. ch. 25–01.2 were required to be formally promulgated as rules. The Court rejected the Department's argument that the Service Chapters were policies concerning only the internal management of the agency and which did not substantively affect the rights of any segment of the public, which would have been exempt from the statutory definition of "rule" and would not have been required to be formally promulgated. *Mullins,* 454 N.W.2d at 734–35; *see* N.D.C.C. § 28–32–01(11)(a) (formerly codified at N.D.C.C. § 28–32–01(6)(a)).

[¶ 23] We disagree with Rennich's contention that *Mullins* is controlling and find this case to be more akin to *Brunner.* In *Brunner,* a claimant for AFDC benefits argued that provisions in the Department's manual involving lump-sum payments should have been formally promulgated in a state administrative rule. This Court rejected that argument, concluding that the manual provisions did not create conditions of eligibility, but "[i]nstead, the conditions of eligibility are set by federal statute and regulation." *Brunner,* 520 N.W.2d at 233. The Court therefore concluded the manual provisions were not required to be formally promulgated.

[¶ 24] We reach the same conclusion in this case. The Medicaid waiver program is governed by voluminous federal regulations, and the eligibility criteria for individuals claiming eligibility as "persons with related conditions" are amply set out in the federal regulations. *See* 42 C.F.R. § 435.1010 (2007). The guidelines and manual provisions challenged by Rennich are explanatory guidelines to aid Department personnel in exercising their professional judgment when applying the federally-mandated eligibility criteria and are not intended to have the force and effect of law. *See* N.D.C.C. § 28–32–01(11)(k). Under *Brunner,* when the eligibility criteria are set out in federal statutes and regulations, it is unnecessary to adopt a state's implementing guidelines and manual provisions as formal rules.

[¶ 25] We conclude the Department did not improperly rely "upon eligibility criteria that does not have the force and effect of law."

VI

[¶ 26] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The district court judgment affirming the Department's order denying Rennich community-based benefits under the Medicaid waiver program is affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.