2011 ND 124

**David KASPARI and Sarah Kaspari, Appellees**

v.

**Carol K. OLSON, Executive Director, North Dakota Department of Human Services, Appellant.**

No. 20100379.

Supreme Court of North Dakota.

June 24, 2011.

C. Nicholas Vogel, Fargo, N.D., for appellees.

Jeanne Marie Steiner, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellant.

VANDE WALLE, Chief Justice.

[¶ 1] The Department of Human Services appealed from a judgment reversing the Department's calculations of David and Sarah Kaspari's monthly recipient liabilities for their nursing home costs. The Department argues the district court erred in construing Medicaid regulations to allow the Kasparis to reduce their monthly recipient liabilities for nursing home care by their payments for mortgage interest and for real estate taxes relating to their life estate interest in farmland. We hold the court erred in construing the Medicaid regulations, and we reverse the judgment and remand for reinstatement of the Department's decision.

I

[¶ 2] In 1996, the Kasparis conveyed approximately 561 acres of farmland in Ransom County by warranty deed to their son and daughter-in-law. The Kasparis

retained a life estate in the farmland and leased their interest in the land to a third-party tenant. The land is adjacent to the Sheyenne River and is subject to a conditional right to use water from the river for irrigation, which would lapse if not exercised. The Kasparis exercised the water rights and constructed irrigation equipment on the land, which was paid for with a series of loans secured by mortgages on the land. The new loans were combined with an existing mortgage on the land. After the irrigation equipment was placed on the land, the Kasparis received increased rental payments for the irrigated land, and as relevant to their application for benefits, they received $44,000 per year in rental payments for the land. The 1996 warranty deed also required the Kasparis to pay their son and daughter-in-law a $5,000 per year management fee while the mortgage remained unpaid.

[¶ 3] In April 2009, the Kasparis entered a nursing home and thereafter applied to Cass County Social Services for Medicaid for their nursing home care. After an initial determination by Cass County Social Services and a subsequent administrative hearing, the Department decided the Kasparis were eligible for benefits and calculated their respective recipient liabilities without allowing deductions for their payments for interest on the mortgage, for real estate taxes for the land, and for the management fee for the land. Using calculations based on their social security and their proportionate share of rental income from the farmland, the Department decided David Kaspari's recipient liability for his nursing home care was $2,366.33 per month and Sarah Kaspari's recipient liability for her nursing home care was $1,534.73 per month.

[¶ 4] On appeal to the district court, it reversed and remanded for recalculation of the Kasparis' respective monthly recipient liabilities, concluding they were entitled to deductions for their payments of mortgage interest and real estate taxes. The court construed the phrase "net income remaining after all appropriate deductions, disregards, and medicaid income levels have been allowed" in N.D. Admin. Code § 75-02-02.1-41.1 with N.D. Admin. Code § 75-02-02.1-38.1(3) and said "[w]hile section 75-02-02.1-38.1(3) enumerates certain deductions, the section cannot be read in conjunction with section 75-02-02.1-41.1 to establish *all* deductions which are appropriate in determining recipient liability." The court said the "use of 'all appropriate deductions' [in 75-02-02.1-41.1] is a much broader term than 'allowed,' [in 75-02-02.1-38.1(3) ] and should be interpreted to include not just the 'allowed' deductions enumerated in section 75-02-02.1-38.1(3), but also the necessary expenses that are normally deducted in arriving at an individual's net income from a particular activity." The court explained that "[b]y combining a reference to the recipient's 'net income' with an allowance for 'all appropriate deductions,' section 75-02-02.1-41.1 makes clear that a recipient's income must be reduced by such ordinary and necessary expenses as required mortgage interest payments and annual real estate taxes in determining recipient liability."

II

[¶ 5] When a decision of an administrative agency is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency. *Reinholdt v. North Dakota Dep't of Human Servs.*, 2009 ND 17, ¶ 10, 760 N.W.2d 101; *Rennich v. North Dakota Dep't of Human Servs.*, 2008 ND 171, ¶ 10, 756 N.W.2d 182. Courts exercise a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Rennich*, at ¶ 10.

Under N.D.C.C. § 28–32–49, our standard of review of the agency's decision is the same as the standard applied by the district court under N.D.C.C. § 28–32–46. *Rennich*, at ¶ 10; *Oyloe v. North Dakota Dep't of Human Servs.*, 2008 ND 67, ¶ 7, 747 N.W.2d 106. We will not reverse the agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 6] In determining whether an agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind reasonably could have determined the agency's factual conclusions were proved by the weight of the evidence from the entire record. *Rennich*, 2008 ND 171, ¶ 11, 756 N.W.2d 182. Questions of law are fully reviewable on appeal from an agency's decision. *Reinholdt*, 2009 ND 17, ¶ 10, 760 N.W.2d 101; *Rennich*, at ¶ 11.

### III

[¶ 7] In 1965, Congress enacted the Medicaid program in Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, as a cooperative federal-state program designed to provide financial assistance to qualified needy persons for their necessary medical care. *Wahl v. Morton County Soc. Servs.*, 1998 ND 48, ¶ 10, 574 N.W.2d 859. The Medicaid program is governed by the interplay of federal and state statutes and regulations. *See* 42 U.S.C. § 1396 *et seq.*; 42 C.F.R. § 430 *et seq.*; N.D.C.C. ch. 50–24.1; N.D. Admin. Code ch. 75–02–02.1. The Department administers the Medicaid program in North Dakota and is authorized to promulgate rules and regulations to determine eligibility for benefits. *See* N.D.C.C. §§ 50–24.1–01.1 and 50–24.1–04; *Reinholdt*, 2009 ND 17, ¶ 12, 760 N.W.2d 101; *Oyloe*, 2008 ND 67, ¶ 8, 747 N.W.2d 106. To be eligible for Medicaid benefits, an applicant must have insufficient income or assets to pay the costs for their necessary medical care and services. N.D.C.C. § 50–24.1–02; *Reinholdt*, at ¶ 12; *Oyloe*, at ¶ 8. Medicaid is intended to be a payor of last resort, and an applicant's other available resources must be exhausted before the applicant is eligible to have Medicaid pay for care. *Reinholdt*, at ¶ 12; *Oyloe*, at ¶ 8. An applicant for Medicaid benefits bears the burden of proving eligibility. N.D. Admin. Code § 75–02–02.1–02.1; *Rennich*, 2008 ND 171, ¶ 12, 756 N.W.2d 182; *Oyloe*, at ¶ 8.

[¶ 8] " '[A]n applicant's participation in the program involves a two-phase process: first, determining medical

eligibility and financial eligibility based on the applicant's income and resources; and second, determining the extent of assistance to which the applicant is eligible based on another calculation of income.'" *Wahl,* 1998 ND 48, ¶ 11, 574 N.W.2d 859 (quoting *Estate of Krueger v. Richland County Soc. Servs.,* 526 N.W.2d 456, 458 (N.D.1994)). "The purpose of the second, post-eligibility phase, calculation of income is to determine the recipient's share of the cost for medical services." *Krueger,* at 458.

[¶ 9] North Dakota law requires consideration of an applicant's "actually available assets" to establish eligibility for Medicaid. N.D. Admin. Code § 75–02–02.1–25. "Asset" is defined as "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75–02–02.1–01(2). Under N.D. Admin. Code § 75–02–02.1–26, a one-person unit's assets not otherwise exempted or excluded under N.D. Admin. Code §§ 75–02–02.1–27 through 75–02–02.1–28.1 may not exceed $3,000. *See also* N.D. Admin. Code §§ 75–02–02.1–29 (Forms of Asset Ownership); 75–02–02.1–30 (Contractual Rights to Receive Money Payments); 75–02–02.1–31 (Trusts); 75–02–02.1–31.1 (Trusts Established by Applicants, Recipients, or Their Spouses After August 10, 1993); 75–02–02.1–32 (Valuation of Assets); 75–02–02.1–33.1 (Disqualifying Transfers Made Before February 8, 2006); 75–02–02.1–33.2 (Disqualifying Transfers Made On or After February 8, 2006); 75–02–02.1–34 (Income Considerations); 75–02–02.1–37 (Unearned Income); 75–02–02.1–38 (Earned Income).

[¶ 10] The value of an applicant's life estate is excluded as an actually available asset for purposes of establishing initial Medicaid eligibility. N.D. Admin. Code § 75–02–02.1–28(14). *See* N.D. Admin. Code § 75–02–02.1–32(4)(c) (table for valuation of life estate and remainder interest). Although the value of the Kasparis' life estate is not an actually available asset for purposes of their initial eligibility determination, the applicable administrative regulations require further consideration of their income from the life estate to determine the extent of assistance to which they may be entitled. *See Wahl,* 1998 ND 48, ¶ 11, 574 N.W.2d 859; *Krueger,* 526 N.W.2d at 458.

■ [¶ 11] The issue in this case involves the treatment of the Kasparis' rent from their life estate and the interpretation of language for calculating recipient liability in N.D. Admin. Code § 75–02–02.1–41.1, which provides, in relevant part:

Recipient liability is the amount of monthly net income remaining after all appropriate deductions, disregards, and medicaid income levels have been allowed. All such income must be considered to be available for the payment of medical services provided to the eligible individual or family.

[¶ 12] The parties agree that recipient liability refers to the amount of an eligible Medicaid recipient's income that must be applied toward payment of medical expenses, including nursing home expenses, before Medicaid will pay the balance. The Department argues that for purposes of calculating recipient liability, "all appropriate deductions" means those deductions authorized by N.D. Admin. Code § 75–02–02.1–38.1(3), which apply to "post-eligibility treatment of income" for "determining the treatment of income and application of income to the cost of care for an individual screened as requiring nursing care services who resides in a nursing facility." The Department argues the only deductions from income allowed under North Dakota law are those listed in the adminis-

trative regulations and mortgage interest and real estate taxes are not listed as permissible deductions and are not allowed under our law. The Kasparis respond that when "net income" and "all appropriate deductions" in N.D. Admin. Code § 75–02–02.1–41.1 are interpreted in the ordinary sense and applied to rental income, they mean gross rental income reduced by the normal expenses incurred in generating the income, including payments for real estate taxes and for mortgage interest.

 [¶ 13] Administrative regulations are derivatives of statutes and are construed under rules of statutory construction. *Gofor Oil, Inc. v. State,* 427 N.W.2d 104, 108 (N.D.1988). Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot,* 2005 ND 136, ¶ 9, 701 N.W.2d 865. The objective in interpreting a statute is to determine legislative intent by first looking at the language of the statute. *Amerada Hess Corp. v. State ex rel. Tax Comm'r,* 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. A statute is ambiguous if it is susceptible to different, rational meanings. *Amerada,* at ¶ 12. If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids, such as legislative history, to determine legislative intent. N.D.C.C. § 1–02–39.

[¶ 14] In harmony with other regulations applicable to recipient liability, par-

ticularly the language of N.D. Admin. Code § 75–02–02.1–38.1, we construe N.D. Admin. Code § 75–02–02.1–41.1 to provide a starting point for calculating recipient liability by defining recipient liability as the net income remaining after all appropriate deductions and disregards enumerated in the regulations have been allowed. The plain language of N.D. Admin. Code § 75–02–02.1–38.1 explicitly states it "prescribes specific financial requirements for determining the treatment of income and application of income to the cost of care for an individual screened as requiring nursing care services who resides in a nursing facility" and provides for enumerated deductions in a specific order for "establishing the application of income to the cost of care." That language is expressly couched in terms of the "application of income to the cost of care," which is the nomenclature for recipient liability. The regulations contemplate that not all the specified deductions or disregards may be applicable to each particular case, which necessitates the use of the descriptive adjective "appropriate" in N.D. Admin. Code § 75–02–02.1–41.1. In the context of that section and the regulations pertaining to the "application of income to the cost of care," the phrase "net income" means that after calculations for allowances appropriate to the particular case, (*i.e.,* "appropriate deductions, disregards, and medicaid income levels"), the amount of monthly net income remaining is the recipient liability. The language of those provisions contemplates working backward using the recipient's income to arrive at the net income remaining after the appropriate disregards and deductions. That interpretation is consistent with a corresponding federal regulation for post-eligibility treatment of income, which does not require state plans to include deductions for mortgage interest and real estate taxes. *See* 42 C.F.R. § 435.733 (providing for post-eligibility treatment of

income and listing required deductions of personal needs allowance, maintenance needs of spouse, maintenance needs of family, expenses not subject to third party payment, and continued SSI and SSP benefits, and an optional deduction of allowance for home maintenance). Although our state law could provide greater benefits than required by federal law, the language of N.D. Admin. Code §§ 75–02–02.1–38.1 and 75–02–02.1–41.1, when read together, does not authorize that result and there is nothing in the available history for the promulgation of N.D. Admin. Code ch. 75–02–02.1 to suggest an intent to provide greater benefits than required by federal law. *See* August 1992 Department of Human Services Synopsis for Adoption of N.D. Admin. Code ch. 75–02–02.1 (chapter intended to conform Medicaid program, in all respects, to applicable federal and state laws).

[¶ 15] That interpretation is also consistent with our interpretation of regulations for an initial eligibility determination in *Wahl*, 1998 ND 48, ¶¶ 9–19, 574 N.W.2d 859. There, the applicant claimed the Department should have used net, rather than gross, farm rental income to decide a community spouse's monthly maintenance needs allowance, which would have entitled her to retain additional assets while qualifying the institutionalized spouse for Medicaid benefits. *Id.* at ¶ 9. We concluded the Department's use of gross unearned income rather than net income for determining eligibility was appropriate and reasonable and complied with both the letter and the spirit of the Medicaid program by requiring all available resources to be included in eligibility decisions. *Id.* at ¶ 19. *Wahl* was decided in 1998 and involved an initial eligibility determination and the application of N.D. Admin. Code § 75–02–02.1–38(1), before the July 1, 2003 effective date for N.D. Admin. Code § 75–02–02.1–38.1. We nevertheless explained:

The Department also reasons an applicant for benefits should not be allowed to select an asset generating expenses to offset income, thereby resulting in eligibility for benefits where none would otherwise exist. For example, an applicant could use assets to obtain a loan to purchase income-producing property with considerable annual expenses, including interest payments on the loan, which would offset the income and result in medicaid eligibility. The loan would eventually be paid off, and the applicant or his estate would own a valuable income-producing asset, even though the applicant received medicaid benefits during the years he was making loan payments. The Medicaid program is intended to be the payor of last resort, with other available resources being used before medicaid pays for an individual's care. "Public policy will not allow the social safety net for persons who are old, poor, and unfortunate to be exploited by those who are affluent."

*Wahl*, at ¶ 18 (citations omitted).

[¶ 16] Although this case does not involve an initial eligibility determination, our explanation in *Wahl* is also pertinent to our interpretation of N.D. Admin. Code § 75–02–02.1–41.1 and the subsequent promulgation of N.D. Admin. Code § 75–02–02.1–38.1 for "post-eligibility treatment of income." A Department report explains that N.D. Admin. Code § 75–02–02.1–38.1 is "a new section that describes specific financial requirements for determining the treatment of income and application of income to the cost of care for an individual needing nursing care services once Medicaid eligibility is established." July 15–16, 2003, Minutes of Administrative Rules Committee of North Dakota Legislative Counsel, Report of Department of Human

Services, Appendix T, p. 13. Our statements in *Wahl* and the subsequent promulgation of N.D. Admin. Code § 75–02–02.1–38.1 provides context for construing provisions for post-eligibility treatment and application of income to the cost of care for recipient liability.

[¶ 17] We construe N.D. Admin. Code § 75–02–02.1–41.1 in harmony with the related provisions of N.D. Admin. Code § 75–02–02.1–38.1 to provide a mechanism for calculating recipient liability by using an applicant's income as a starting point and working backward from that figure to the amount of monthly net income remaining after allowances for all the appropriate deductions and disregards specifically identified in the regulations. Because mortgage interest and real estate taxes are not specifically listed in the applicable regulations, we conclude the Department correctly construed N.D. Admin. Code § 75–02–02.1–41.1 in harmony with the disregards and deductions in N.D. Admin. Code § 75–02–02.1–38.1 and calculated the Kasparis' recipient liabilities.

### IV

[¶ 18] We reverse the district court judgment and remand for reinstatement of the Department's decision.

[¶ 19] ALLAN L. SCHMALENBERGER, S.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 20] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of KAPSNER, J., disqualified.