2012 ND 183

**Wilfred DAHLY, Appellant**

v.

**Maggie ANDERSON, Interim Executive Director, North Dakota Department of Human Services, Appellee.**

No. 20120013.

Supreme Court of North Dakota.

Aug. 30, 2012.

Richard R. LeMay (argued), Minot, N.D., and Meredith L. Vukelic (appeared), Bismarck, N.D., for appellant.

Jeanne M. Steiner, Assistant Attorney General, Bismarck, N.D., for appellee.

KAPSNER, Justice.

[¶ 1] Wilfred Dahly appeals from a district court judgment affirming a final order of the North Dakota Department of Human Services ("Department") which determined he was ineligible for Medicaid benefits. We reverse and remand, concluding the Department erred when it concluded the proceeds of the sale of Wilfred Dahly's home were an available asset which exceeded the asset limit for Medicaid eligibility.

I

[¶ 2] In 2004, Wilfred and Geraldine Dahly each executed a power of attorney naming their son, Rick Dahly, as their attorney-in-fact. Geraldine Dahly developed Alzheimer's disease and by January 2006 required 24–hour care. Wilfred Dahly initially provided care for Geraldine Dahly, but he also began experiencing progressively worsening dementia. In January 2007, when Wilfred Dahly could no longer provide the required care for Geraldine Dahly, their daughter, LeAnn Greenwell, moved with her husband from their home in Kentucky to live with, and provide care for, Wilfred and Geraldine Dahly. In February 2007, Rick Dahly, on behalf of Wilfred and Geraldine Dahly, signed an agreement to pay Greenwell $2,250 each month for their care. Wilfred Dahly's doctor indicated that, by August 2007, Wilfred Dahly required 24–hour care.

[¶ 3] Geraldine Dahly's condition continued to worsen until Greenwell could no

longer care for her at home, and Geraldine Dahly entered a nursing home in January 2008. Geraldine Dahly applied for and began receiving Medicaid benefits. In April 2008, Rick Dahly, on behalf of Wilfred Dahly, signed a new care agreement, agreeing to pay Greenwell $1,500 per month to provide care for Wilfred Dahly in his home.

[¶ 4] In April 2009, Rick Dahly, as Geraldine Dahly's attorney-in-fact, signed a quit claim deed transferring her interest in the home to Wilfred Dahly. In May 2010, Rick Dahly, as Wilfred Dahly's attorney-in-fact, deeded the house to Greenwell. Wilfred Dahly entered a nursing home in July 2010. Greenwell sold the house for $180,000 in August 2010, and split the net proceeds of approximately $160,000 with Rick Dahly.

[¶ 5] Wilfred Dahly applied for Medicaid benefits in November 2010. Ward County Social Services ("County") denied Wilfred Dahly's application, determining the proceeds from the sale of the house were an available asset putting him over the $3,000 Medicaid asset limit. Wilfred Dahly appealed to the Department. After an administrative hearing, the Department issued a final order concluding the proceeds from the sale of the house were an available asset and affirming the denial of benefits. Wilfred Dahly appealed to the district court, which affirmed the Department's final order.

II

[¶ 6] When a final decision of an administrative agency is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency. *Kaspari v. Olson*, 2011 ND 124, ¶ 5, 799 N.W.2d 348. Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, courts exercise a limited review in appeals from an administrative agency's decision. *Simons v. State*, 2011 ND 190, ¶ 8, 803 N.W.2d 587; *Kaspari*, at ¶ 5. The district court under N.D.C.C. § 28–32–46, and this Court under N.D.C.C. § 28–32–49, must affirm a final order of an administrative agency unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant[, or]
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 7] In determining whether an agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind reasonably could have determined the agency's factual findings were proven by the weight of the evidence from the entire record. *Simons*, 2011 ND 190, ¶ 8, 803 N.W.2d 587; *Kaspari*, 2011

ND 124, ¶ 6, 799 N.W.2d 348. Questions of law are fully reviewable on appeal from an agency's decision. *Kaspari*, at ¶ 6.

## III

[¶ 8] Wilfred Dahly contends the Department erred in concluding he was not entitled to claim the caregiver child exemption under 42 U.S.C. § 1396p(c)(2)(A)(iv) and N.D. Admin. Code § 75-02-02.1-33.2(7)(a)(4) for the transfer of the family home to his daughter.

[¶ 9] We summarized the fundamentals of the Medicaid program in *Kaspari*, 2011 ND 124, ¶ 7, 799 N.W.2d 348 (citations omitted):

> In 1965, Congress enacted the Medicaid program in Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, as a cooperative federal-state program designed to provide financial assistance to qualified needy persons for their necessary medical care. The Medicaid program is governed by the interplay of federal and state statutes and regulations. The Department administers the Medicaid program in North Dakota and is authorized to promulgate rules and regulations to determine eligibility for benefits. To be eligible for Medicaid benefits, an applicant must have insufficient income or assets to pay the costs for their necessary medical care and services. Medicaid is intended to be a payor of last resort, and an applicant's other available resources must be exhausted before the applicant is eligible to have Medicaid pay for care. An applicant for Medicaid benefits bears the burden of proving eligibility.

[¶ 10] In determining whether an individual qualifies for Medicaid benefits, assets which are "actually available" to the individual will generally be considered when determining if the asset eligibility requirements are met:

A one-person unit is eligible for Medicaid benefits if the value of that person's available assets does not exceed $3,000. An "asset" is defined as "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75-02-02.1-01(2). Any asset which is "actually available" must be considered when determining eligibility for Medicaid benefits. Section 75-02-02.1-25(1), N.D. Admin. Code, specifies when an asset is considered actually available:

> Assets are actually available when at the disposal of an applicant, recipient, or responsible relative; when the applicant, recipient, or responsible relative has a legal interest in a liquidated sum and has the legal ability to make the sum available for support, maintenance, or medical care; or when the applicant, recipient, or responsible relative has the lawful power to make the asset available, or to cause the asset to be made available.

The determination whether an asset is actually available for purposes of Medicaid eligibility is largely a fact-specific inquiry depending on the circumstances of each individual case. The "actually available" requirement must be interpreted reasonably, and the focus is on the applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction.

*Christensen v. North Dakota Dep't of Human Servs.*, 2011 ND 77, ¶ 9, 796 N.W.2d 390 (citations omitted).

[¶ 11] In calculating whether an applicant meets the asset eligibility requirements, federal law mandates that, if an individual has transferred or disposed of assets for less than full market value

during a "look-back" period, the individual will be ineligible for Medicaid benefits for a prescribed period of time. 42 U.S.C. § 1396p(c)(1)(A); *see also* N.D. Admin. Code § 75–02–02.1–33.2(2). Federal law further provides for an exemption to the disqualifying transfer rule if the individual's house is transferred to a caregiver child under certain conditions:

> (2) An individual shall not be ineligible for medical assistance by reason of paragraph (1) to the extent that—
>
>> (A) the assets transferred were a home and title to the home was transferred to—
>>
>> . . . .
>>
>> (iv) a son or daughter of such individual . . . who was residing in such individual's home for a period of at least two years immediately before the date the individual becomes an institutionalized individual, and who (as determined by the State) provided care to such individual which permitted such individual to reside at home rather than in such an institution or facility . . . .

42 U.S.C. § 1396p(c)(2)(A)(iv); *see also* N.D. Admin. Code § 75–02–02.1–33.2(7)(a)(4). The statute expresses a clear federal policy to encourage the child of an elderly disabled parent to provide live-in care to allow the parent to remain at home rather than in a nursing care facility, and to allow transfer of the family home to that child under certain conditions without affecting the parent's eligibility for Medicaid benefits.

■ [¶ 12] There is no question that Greenwell lived in the home and provided

necessary care to Wilfred Dahly for a period of more than two years after it was determined by his treating physician that he could no longer live alone in the home and required 24–hour care. The Department concedes that the care Greenwell provided met the standards for type and length of care required to satisfy the caregiver child exemption.[1] The Department argues, however, that the proceeds from the sale of the house are nevertheless an available asset to Wilfred Dahly because title to the house was transferred by Rick Dahly, acting as Wilfred Dahly's attorney-in-fact, rather than by Wilfred Dahly personally.

■ [¶ 13] The crux of the Department's argument is that, because Rick Dahly had a fiduciary duty to Wilfred Dahly when acting as his attorney-in-fact, state trust laws applied and there was a presumption of a conflict of interest and undue influence when Rick Dahly transferred the house to Greenwell. The Department argues Wilfred Dahly thus may recover the proceeds by legal action, and the proceeds are an "available asset" to him. The Department explained its position in its brief on appeal:

> This Court has recognized that a power of attorney creates an agency that entails a confidential relationship and fiduciary duties. Further, the agent cannot do any act that a trustee is forbidden to do by any of the provisions of the North Dakota Uniform Trust Code ("UTC"). N.D.C.C. §§ 03–02–05; 59–09–01. . . .
>
> . . . .

---

1. Although the County at one point notified Wilfred Dahly that he would not qualify for the caregiver child exemption because Greenwell had been paid to care for Wilfred and Geraldine Dahly, the Department does not rely on that factor as a basis for its denial of benefits to Wilfred Dahly. We note that the statutes and regulations creating the caregiver child exemption do not limit its application to only caregiver children who provided care without being paid.

The UTC requires a trustee to administer the trust in good faith. Further, a transaction involving the trust property is presumed to be affected by a conflict between the trustee's personal interest and the fiduciary duty if it is entered into by the trustee with the trustee's sibling. N.D.C.C. § 59–16–02(3). Finally, when a trustee obtains any advantage from a beneficiary, there is a presumption the transaction was entered without sufficient consideration and under undue influence. N.D.C.C. § 59–18–01.1. The UTC also provides remedies for breach of trust, including recovering the property's proceeds to restore the value of the trust to what it would have been had the breach not occurred. N.D.C.C. §§ 59–18–01, 59–18–02.

. . . .

The laws, as applied in this case, establish Rick had a duty to oversee Wilfred's money and property, to protect it, and to use it for Wilfred's benefit, not to profit from any transaction he made as attorney in fact. Wilfred lacked the capacity to ratify Rick's transfer of the house to LeAnn. Thus, Rick had a duty to transfer Wilfred's house for one hundred percent of the fair market value. Because it was transferred for less, the difference (or the uncompensated value) is considered an available asset for Medicaid eligibility purposes.

Rick breached his fiduciary duties by transferring the house to LeAnn, who sold it and split the sale proceeds with Rick. Rick benefitted from the transfer of the house to LeAnn and thus, the transfer triggers the presumption of a conflict as well as the presumption of undue influence. Rick has not rebutted either of these presumptions and the remedy for the breach is to recover the proceeds. These proceeds are available assets because Wilfred has a cause of action against Rick to recover them. (Citations omitted.)

[¶ 14] The Department's arguments are premised on its contention that the caregiver child exemption under 42 U.S.C. § 1396p(c)(2)(A)(iv) only applies if the individual applying for Medicaid benefits or his spouse *personally* transfers the house, but does not apply if the transfer is accomplished by the individual's attorney-in-fact. Although the Department cites 42 U.S.C. §§ 1396p(c)(1)(A) and 1396p(c)(2)(A)(iv) and N.D. Admin. Code §§ 75–02–02.1–33.2(2) and (7) to support its claim, we find nothing in those provisions limiting their application to transfers made by the individual personally, rather than by a fiduciary. Acts done on behalf of an incompetent individual under a power of attorney bear the same legal effect as if performed by the individual personally: "All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and the principal's successors in interest as if the principal were competent and not disabled." N.D.C.C. § 30.1–30–02.

[¶ 15] The result urged by the Department creates an inequitable and unsupportable distinction between elderly individuals who require round-the-clock in-home care because of mental disabilities and those who require such care because of physical limitations. The Department would allow only those individuals with strictly physical disabilities to invoke the caregiver child exemption because they are mentally competent and able to personally transfer the home to the caregiver child. Individuals who are not legally competent to accomplish the transfer on their own, but require the assistance of a fiduciary, would be denied the same opportunity to

take advantage of the caregiver child exemption. In a case involving the closely-related question whether the interspousal transfer exemption in 42 U.S.C. § 1396p(c)(2)(A)(i) applied to a transfer made by a guardian on behalf of a mentally incapacitated individual, the court in *In re Labis,* 314 N.J.Super. 140, 714 A.2d 335, 338 (N.J.Super.Ct.App.Div.1998), explained:

> Concepts of equal protection and inherent fairness dictate that an incompetent should be given the same opportunity to use techniques of Medicaid planning and estate planning as others more fortunate. Since Federal and New Jersey Medicaid laws permit interspousal transfers of the marital home, a guardian may effectuate such a transfer provided that complies with the best interest of the ward inclusive of his desire to benefit the natural objects of his bounty.

[¶ 16] In essence, this case presents a conflict between two competing public policies: the federal law encouraging children to care for their incapacitated parents in their homes, and state trust laws protecting mentally incompetent individuals from the effects of undue influence and self-dealing. We cannot sanction the Department's attempt in this case to use a questionable application of state trust law to trump a clearly expressed federal policy which allows children who have provided exceptional and long-term live-in care to their severely disabled parents, enabling them to remain in their home and out of a nursing care facility, to receive the family home without jeopardizing the parents' eligibility for Medicaid.

[¶ 17] Although we recognize the general state policy to protect incapacitated parents from conflicts of interest and undue influence by fiduciaries, *see Makedonsky v. North Dakota Dep't of Human Servs.,* 2008 ND 49, ¶ 12, 746 N.W.2d 185, we question application of that policy in the limited circumstances presented by the caregiver child exemption in federal law. We believe there is a diminished concern with conflicts of interest or self-dealing when, by definition, the caregiver child exemption applies only when, for a period of longer than two years, the child has lived in the parent's home and provided the required level of care to allow the parent to remain in the family home and out of a nursing care facility. It would be unjust to apply a presumption of undue influence and conflict of interest under the facts in this case, when Greenwell uprooted her life, moved with her husband from Kentucky to North Dakota, and for several years provided a high degree of care to her parents allowing them to remain in their home and out of a nursing home. Wilfred Dahly and Greenwell complied precisely with the requirements of the caregiver child exemption, but now the Department seeks to engraft additional requirements which are not included in the statutes or regulations. We cannot condone the Department's attempt to circumvent a clear expression of federal law through an overly broad application of state trust law.

[¶ 18] We conclude the Department erred as a matter of law in holding that the caregiver child exemption under 42 U.S.C. § 1396p(c)(2)(A)(iv) did not apply in this case and that the proceeds from the sale of the house were an available asset to Wilfred Dahly. Accordingly, the Department erred in concluding that Wilfred Dahly's available assets exceeded allowable limits and that he was ineligible for Medicaid benefits.

IV

[¶ 19] We reverse the judgment affirming the Department's final order, and we

remand to the Department to redetermine Wilfred Dahly's eligibility for Medicaid benefits without considering the proceeds from the sale of the house as an available asset.

[¶ 20] CAROL RONNING KAPSNER, MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 21] I respectfully dissent. Under the facts of this case, I would affirm the judgment.

[¶ 22] Rick Dahly, son and attorney-in-fact of his mother, Geraldine Dahly, transferred her interest in the home to his father and the applicant, Wilfred Dahly. A year later, Rick Dahly, acting as Wilfred Dahly's attorney-in-fact, transferred title to the home to LeAnn Greenwell, daughter and caregiver of Wilfred Dahly. Two months later, Wilfred was in a nursing home. One month later, Greenwell sold the home and gave half the proceeds to Rick Dahly. Three months later, Wilfred applied for Medicaid benefits. Given these facts, including the timing of the events, I believe a reasoning mind could conclude that the caregiver exemption to the disqualifying transfer rule does not apply in that the transfer was not to enable the daughter to remain and care for her father in his home as stated in the rule, but rather to divide the applicant's assets among his children.

[¶ 23] I might agree that a person holding a power of attorney for an applicant may transfer title to the applicant's home to the son or daughter of the applicant who is caring for and residing in the applicant's home for the requisite time under the rule without disqualifying the applicant for benefits, but that does not end my inquiry. An applicant who transferred title to his home to all of his children, including one who cared for and lived with the applicant, would apparently not be entitled to benefits, at least to the extent of the value of the home transferred to the non-caregiver children. Yet it appears that is what the majority opinion would allow here. Rick Dahly transferred the house to Greenwell, who promptly sold the house and gave half the net proceeds to her brother.

[¶ 24] It is not surprising that parents want to give part of their estate to all their children and for all the children to desire to share in their parent's estate. However that result cannot and should not be permissible when it is accomplished at the expense of the public, that is, the public pays the nursing home expenses while the children receive the parent's estate. The majority has seemingly drawn the path for families to indirectly, if not directly, accomplish that goal.

[¶ 25] GERALD W. VANDE WALLE, C.J. and DALE V. SANDSTROM, J., concur.